UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN GERATY, | ) |
| Plaintiff, | ) |
| | ) Case No. 09 C 6992 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| VILLAGE OF ANTIOCH, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

On November 7, 2013, a jury found that the Village of Antioch discriminated against Dawn Geraty, a police officer in the Village, on the basis of her gender by failing to promote her to the position of sergeant and by failing to transfer her to the position of detective. Now before the court is Geraty's motion for entry of an order awarding her backpay, prejudgment interest, and instatement to the rank of sergeant. For the reasons stated below, Geraty's motion is granted in part. The court concludes that Geraty is entitled to backpay and prejudgment interest as measured from July 22, 2007, and that instatement to the rank of sergeant is an appropriate remedy.

### I. BACKPAY

"[B]ack pay is among the catalog of remedies a court can employ when exercising its wide discretion to fashion a remedy to make the victim of discrimination whole." *O'Sullivan v. City of Chicago*, 540 F. Supp. 2d 981, 984-85 (N.D. Ill. 2008). To calculate backpay, the court "measur[es] the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by defendant." *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, 606 (7th Cir. 1985) (internal quotation marks

omitted). The court must therefore determine, as best it can, the date on which Geraty would have been promoted to sergeant absent the Village's discrimination.

Although the jury found that the Village discriminated against Geraty in connection with the 2006 sergeant-promotion process, it did not determine *when* during that process she would have been promoted. The 2006 process was in place from June 1, 2006, to June 5, 2009, and consisted of three parts: a written test, an oral interview, and a merit score assigned by the Chief of Police. These three components were then incorporated into an overall score which determined a candidate's ranking on a sergeant promotion list. The Chief promoted candidates off the list as positions became available.

Geraty alleged that the Village discriminated against her in two ways. First, Geraty alleged that the Village Commissioners, who conducted the oral interview, discriminated against her by giving her a low oral-interview score on the basis of her gender. This led to her being ranked lower on the sergeant promotion list than she would have been ranked were it not for the discrimination. Second, Geraty alleged that the Village's Chief of Police at the time, James Foerster, discriminated against her by not promoting her off the list when he had the opportunity to do so.

Geraty argues that the court should measure backpay from June 1, 2006—the earliest possible date on which she could have been promoted off the 2006 list. She admits, however, that even absent any discrimination, she would have ranked no higher than third on the sergeant-promotion list, behind officers Daryl Youngs and Geoffrey Guttschow. Those officers were promoted on June 12, 2006, and July 22, 2007, respectively. It is thus unlikely that Geraty would have been promoted before July 22, 2007, even absent any discrimination.

The Village argues that the court should measure backpay from June 5, 2009—the latest possible date on which Geraty could have been promoted off the 2006 list. The Village argues that the court should not measure backpay from any earlier date because doing so would require the court to speculate as to when Geraty would have been hired. But measuring backpay always involves some level of speculation, and so backpay calculations "need not be precise; exactness is not expected." *EEOC v. Custom Cos., Inc.*, Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *12 (N.D. Ill. Mar. 8, 2007).

Here, the court finds that, of the possible scenarios, it is most likely that Geraty would have been promoted third off the 2006 sergeant list, behind officers Youngs and Guttschow. Geraty testified at trial that she was not surprised that officer Youngs ranked higher than she did on the 2006 list given his years of seniority and his high score on the written test. Officer Guttschow also received a higher score on the written test than Geraty. But Geraty had more seniority and scored higher than any of the other candidates on the 2006 list. She would have ranked third on that list were it not for her low oral interview score, and the Chief of Police generally promoted candidates off the list in the order in which they appeared on the list. The court will thus award backpay as measured from July 22, 2007, which is the date that the third sergeant position became available.

In addition to challenging the date from which backpay should be measured, the Village argues that Geraty's backpay award should be reduced because she went on workers' compensation leave from October 27, 2007, to April 17, 2010. Geraty went on leave after she was injured while responding to a call regarding a missing child. She argues that the court should not reduce her backpay award because she would not have suffered an injury had she

been a sergeant. She notes that no other sergeants responded to the call and that she was accompanied by only one other patrol officer.

"The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 889 (3d Cir. 1984). In light of this principle, "ambiguities in what an employee . . . would have earned but for discrimination should be resolved against the discriminating employer." *Steward v. Gen. Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976). Here, the court agrees with Geraty that, had she been promoted to sergeant in July 2007, it is unlikely that she would have suffered a workplace injury as a patrol officer in October 2007. Thus, to provide Geraty the make-whole relief that Title VII contemplates, and resolving any uncertainty in her favor, the court declines to reduce Geraty's backpay award because she went on leave for an injury that she likely would not have sustained were it not for the discrimination.

Finally, the Village argues that Geraty's backpay award should be reduced because she failed to mitigate her damages. Failure to mitigate damages is an affirmative defense. *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). To prevail on this affirmative defense, the Village bears the burden of proving that (1) Geraty failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that Geraty might have found comparable work by exercising reasonable diligence. *Id.*

The Village has not met that burden here. The Village argues that Geraty failed to mitigate her damages by failing to take the promotion test in 2009 and by scoring poorly on the sergeant test in 2012. But when the Village solicited applicants for the 2009 sergeant promotion process, Geraty was still on leave because of her injury. James Foerster was still the Chief of Police, and at least one of the Village Commissioners was the same as in 2006. Geraty has stated

that the reason she did not take the 2009 promotion test was because she thought it was pointless to apply when the same decision-makers who discriminated against her in 2006 would decide whether to promote her in 2009. Given these circumstances, the court cannot find that she "failed to exercise reasonable diligence" or that there was a "reasonable likelihood" that she would have been promoted had she taken the 2009 test. *See Hutchison*, 42 F.3d at 1044. Nor does the court agree with the Village that Geraty failed to exercise reasonable diligence by scoring poorly on the 2012 test, as "[t]he plaintiff's burden to mitigate damages does not require success, but only an honest, good faith effort." *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 438 (7th Cir. 1992). The court thus declines to reduce Geraty's backpay award for failing to mitigate damages.

## II. PREJUDGMENT INTEREST

The parties dispute the applicable prejudgment interest rate. Geraty seeks a prejudgment interest rate of 5.01%, which was the daily effective federal funds rate in effect in June 2006. The Village argues that the court should apply the federal funds rate that was in effect on the first day of each year for which Geraty claims damages.

The Seventh Circuit has stated that "the best starting point" in calculating prejudgment interest is to calculate "the average of the *prime rate* for the years in question." *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998) (internal quotation marks omitted). As the parties have provided no reason to depart from this starting point, the court will adhere to it. Courts generally apply the monthly average prime rate. *See, e.g.*, *Cabernoch v. Union Labor Life Ins. Co.*, No. 06 C 1515, 2009 WL 2497669, at *2 (N.D. Ill. Aug. 14, 2009); *Ryl-Kuchar v. Care Ctrs., Inc.*, 564 F. Supp. 2d 817, 829 (N.D. Ill. 2008), *aff'd*, 565 F.3d 1027 (7th Cir. 2009). Interest should be compounded monthly, *see Juszynski v. Life*

*Ins. Co. of N. Am.*, No. 06 CV 5503, 2008 WL 877977, at *15 n.9 (N.D. Ill. Mar. 28, 2008), and should be calculated from July 22, 2007, the date on which Geraty would have likely been promoted had the Village not discriminated against her. The parties are directed to update the prejudgment interest calculation accordingly and to submit an agreed calculation to the court within fourteen days of this order.

### III. INSTATEMENT

Finally, the court must determine whether to instate Geraty to the rank of sergeant. Title VII vests district courts with "broad discretion to fashion an equitable remedy that makes whole a plaintiff who has been discriminated against by [her] employer." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863 (7th Cir. 2001). "The law is clear that reinstatement—in a case like this one, 'instatement' in the first instance—is the preferred remedy in Title VII cases." *Deloughery v. City of Chicago*, No. 02 C 2722, 2004 WL 1125897, at *9 (N.D. Ill. May 20, 2004) (citing *Bruso*, 239 F.3d at 861), *aff'd*, 422 F.3d 611 (7th Cir. 2005). While reinstatement is the preferred remedy, "a court is not required to reinstate a successful plaintiff where the result would be a working relationship fraught with hostility and friction." *Bruso*, 239 F.3d at 861.

The Village has raised two objections to instating Geraty to the rank of sergeant. First, the Village argues that Geraty will be unable to command the respect of her fellow officers, who might believe that she has not truly "earned her stripes." Second, the Village argues that instating Geraty would harm innocent third parties. At the request of the Village, the court held a two-day evidentiary hearing on these issues.

As to the Village's first objection, any belief that that Geraty did not earn her stripes is inconsistent with the jury's verdict in this case. The jury found that Geraty earned her stripes when it determined that she was not promoted to sergeant because of her gender. She earned her

stripes in 2006, when she received the third-highest score of officers taking the sergeant-promotion exam. She earned her stripes in the twelve years before 2006 when she performed capably as a patrol officer, earning the respect of her colleagues. Although the current Chief of Police, Craig Somerville, has stated that he believes "there is a high likelihood" that "there will be a perception that Ms. Geraty did not earn her stripes" (Somerville Aff. ¶ 27, ECF No. 197-1), the officers who testified at trial and at the evidentiary hearing testified that they respected Geraty and would respect any order instating her to the rank of sergeant. The court did not sense from these officers that the working relationship would be "fraught with hostility and friction" were Geraty instated to the rank of sergeant. *Bruso*, 239 F.3d at 861.

Chief Somerville also expressed concern that officers might resent Geraty "because she filed a lawsuit," "because . . . she was awarded . . . a substantial monetary sum," and because she "challenged [Sergeants Jensen, Guttschow, and Fendel] at trial and thus created a level of tension and discomfort." (*Id.* ¶¶ 13, 33.) But these arguments would apply in *any* Title VII case in which a plaintiff had prevailed. The Seventh Circuit has cautioned that "[a] court must be careful . . . not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement." *Bruso*, 239 F.3d at 862. If resentment toward the plaintiff for prevailing in a lawsuit were sufficient to deny instatement, then instatement would be the exception, not the "preferred remedy." *Id.* at 861.

The second objection the Village has raised is that Geraty's instatement to the rank of sergeant would harm innocent third parties. The Village notes that Sergeant Guttschow was promoted in July of 2007 and is now the most senior sergeant in the police department. As the most senior sergeant, Guttschow has chosen to work the day shift because it is more convenient for his family life. If Geraty is instated with greater seniority than Guttschow, she may choose to

work the day shift instead.  But at least with respect to Sergeant Guttschow, the court has already found that Geraty would not have been promoted ahead of him, and so she would not have greater seniority than him were she instated now.  Thus, Geraty's instatement will have no effect on Sergeant Guttschow.

The Village also notes that instating Geraty would mean that an officer who passed the 2012 sergeant exam will have to wait longer to be promoted.  But "[m]aking the victim of discrimination whole ordinarily requires reinstating [her], even if that requires pushing out someone who was hired to fill the plaintiff's old position." *Hicks v. Forest Pres. Dist. of Cook Cnty., Ill.*, 677 F.3d 781, 792 (7th Cir. 2012).  If certain officers have benefitted from the Village's failure to promote Geraty in 2006, they have done so only because of actions that the jury found to be discriminatory.  No matter how innocent those officers are, an equitable remedy must focus primarily on placing Geraty "where [she] would have been were it not for the unlawful discrimination." *Hutchison*, 42 F.3d at 1045 (internal quotation marks omitted).  The only way to achieve that purpose of Title VII is to instate Geraty to the position that the jury found she was unlawfully denied.

It would be unrealistic to believe that instatement, following a trial in which numerous co-employees' abilities, experience and conduct were compared, would be effortless.  Indeed, the testimony at the instatement hearing made clear that this lawsuit, like most lawsuits, stirred up some negative feelings among the Village's employees.  Nevertheless, the court saw nothing in the record that distinguished this case from the garden-variety case of its kind.

Indeed, if anything distinguished this case, it is that Geraty and her co-employees are law-enforcement officers, who have a sworn obligation to uphold the law, including the law giving rise to this case.  If Geraty, Chief Somerville and Geraty's fellow officers all make

reasonable good faith efforts to uphold and support the jury's verdict, the court has no reason to doubt that they will do so successfully.

## IV. CONCLUSION

Geraty's motion for entry of an order for backpay, prejudgment interest, and instatement is granted in part. Within fourteen days of this order, the Village must (i) update the previous backpay and prejudgment interest calculations and confer with counsel for Geraty in order to arrive at an agreement on those calculations so they may be submitted to the court; and (ii) promote Geraty to sergeant with whatever seniority rights she otherwise would have enjoyed had she been promoted on July 22, 2007, behind officers Youngs and Guttschow.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 15, 2014