**IN THE UNITED STATES DISTRICT COURT,**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DAWN GERATY,<br>    Plaintiff,<br>v.<br>THE VILLAGE OF ANTIOCH,<br>    Defendant. | Court No. 09 CV 6992 |

## DEFENDANT VILLAGE OF ANTIOCH'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, Village of Antioch, by and through its attorneys, Lori A. Vanderlaan and Allie M. Burnet of Best, Vanderlaan & Harrington, moves this Court pursuant to F.R.C.P. 50(b) for an Order granting its Renewed Motion for Judgment as a Matter of Law, as follows:

## UNDISPUTED FACTS[1]

**Sergeant Promotion**

Illinois law mandated procedures to be used to promote a police officer to sergeant, such that the promotional process must be competitive and based on examination, merit and seniority, and that promotions shall be made from the 3 having the highest rating.(65 ILCS 5/10-2.1-1; 5/10-2.1-3; 5/10-2.1.-5; 5/10-2.1-15; TR, pgs.818, lns. 11-25; 820, lns. 21-25; 821; lns. 1-14; 824, lns. 15-20, JT EXH. 1; D EXH 48-50, 52). The Village of Antioch implemented Rules and Regulations pursuant to state law.(TR, pgs. 820, lns. 6-11; 823, lns. 16-25; JT EXH 1). The Rules set forth the procedures and formulas to be used in determining qualifications and eligibility for promotion to sergeant. (TR, pg. 825, lns. 3-18). Each applicant was required to take a written test and then an oral test. (JT EXH1; TR, pgs. 42, lns. 5-8; 43 lns. 23-25; 44, ln. 1). The written raw test score and oral raw test score each counted toward 35% of the applicant's final total score. (JT EXH 1; TR, pg. 46, lns. 19-25). Additionally, each applicant was eligible

---

[1] The following evidence is taken from the trial transcripts, admitted exhibits and any additional exhibits referenced herein, all attached to Defendant's Addendum of Exhibits and incorporated herein by reference.

1

for 1 percentage point to a maximum of 5 for each year of service, and those with military service (if requested) were eligible to add 5 percentage points to their total score. (JT EXH 1; TR, pgs. 45, lns. 13-25; 46, lns.1-25). The department merit and efficiency rating (chief points) was a score, between 1-100, to be determined by the chief of police. (JT EXH 1; TR, pgs. 45, lns. 7-12; 827, lns. 7-12). This merit score counted towards 20% of the final total score. (JT EXH 1; TR, pg. 46, lns. 19-25). All other aspects of the promotional exam, including determining the written test, administration of the written test, determining oral interview questions, scoring and administration, calculating the total final score, and determining order of eligibility for promotion was strictly left to the Board of Commissioners. (TR, pgs. 826, lns. 19-15; 827, lns. 1-6; 827, lns. 13-25; 828, lns. 2-18, JT EXH 1; D EXH 52). The above process was followed in the 2006 exam. (TR, pgs. 686, lns. 5-7; 603 lns. 21-23).

Chief Foerster had no role in the eligibility list determination beyond whatever impact the chief points had on the final scoring. (TR, pgs. 484, lns. 14-21; 516, lns. 6-8; 704, lns. 22-25; 827, lns. 7-12; 872 , lns. 20-22). He did not provide his chief points to the commissioners until May 15, 2006, after oral interviews were scored on May 13, 2006. (TR, pgs. 496, lns. 21-15; 497, ln. 1; 626, lns. 9-11; 661, lns. 19-21; 701, ln. 2-25; 702, lns. 1-2.; 732, lns 19-25; 733, lns. 1-4). Plaintiff admitted to having no evidence the chief played any role in determining eligibility rankings. (TR, pgs. 146, lns. 22-25; 147, lns. 1-7).

In 2006, the Commissioners were Jerry Kozinski, Dee Dee Palmer and Kevin Schoudel. (TR, pgs. 654, lns. 11-13; 337 ln. 15; 814, lns. 20-25; 815, lns. 1-15). Each applicant on the final eligibility list took the same May 6, 2006, written exam, and underwent the same May 13, 2006, oral interview, at which they were asked the same questions, in the same order, by the same commissioners. (TR, pgs. 605, lns. 6-10; 615, lns. 17-20; 687, ln 25; 688, lns. 1-2; 691; lns. 24-

25; 692, lns. 1-9 ). Plaintiff admits she has no evidence that sex played any role in the administration or grading of that exam. (TR, pg. 142, lns. 5-18). Plaintiff likewise admitted that none of the oral examination questions were biased as to sex, none of the commissioners asked her questions related to her sex, and she has no evidence that sex played any role in the scoring of her oral interview. (TR, pg. 154, lns. 6-12).

The written test scores resulted in Plaintiff scoring 76, behind Officers Youngs (86) and Guttschow (80). (JT EXH 2, 6, 18; DEF EX. 10; TR, pgs. 1104, lns. 11-25 – pg. 1110). She placed ahead of Officer Jensen, who scored 71%. *Id.* The other male officers scored between Jensen and Plaintiff. *Id.* However, applying the 35% weight to the exam test score, Plaintiff was only 1.75 points above Jensen in total scoring after the written exam. (TR, pg. 137, lns. 5-10).

As to the oral examination, each commissioner evaluated candidates for their management and leadership qualities, as a sergeant position was a management position. Immediately after the interview, the commissioners discussed the oral examination performance of the applicant just interviewed based on qualities they sought. (TR; pgs. 9, lns. 13-21; 697, lns. 8-17; 841, lns. 17-25, 841, lns. 1-11). At that time, the commissioners reached a consensus on the score for that applicant, which was written on the candidates interview sheet. (TR, pgs. 618, lns. 22-25; 619, lns. 4-25; 620, ln. 1 -21; 696, lns. 6-13; 697, lns. 8-17; 848, lns. 1-7; 850, lns. 14-25; 851, lns. 1-25). The same process was used for each candidate. (TR pgs. 621, lns. 16-25; 622, lns.1-24; 623, lns. 1-14; 697, lns. 8-17;). Each Commissioner testified as to the qualities they sought when interviewing each candidate, and that after each interview was conducted, they had a recollection of what was said, how the candidate presented, and that the scores assigned at that time were a reflection of their evaluation on that date. (TR, pgs. 618, lns. 9-15; 624, lns. 17-25; 625, lns. 1-23; 690, lns. 18-24; 698, lns. 6-10; 700, ln. 25; 701, lns. 1-4; 843, lns. 7-11; 852,

lns. 1-21). Commissioner Kozinski had specific recollection of Plaintiff's performance compared to other candidates in the oral interview. (TR, pgs. 855, lns. 14-25; 856, lns. 1-25; 857, lns. 1-14; 15 – 25; 858, lns. 1-25; 859, lns. 1-19). He testified that in comparing Plaintiff, her answers were short, she did not provide much information, she appeared to lack confidence, and was not ready to take on the role of sergeant. *Id.* Her interview was 15 minutes because of her short answers, compared to others that went the entire 30 minutes. (TR, pg. 859, lns. 5-7).

It should be noted that the Commissioners were unanimous on Plaintiff's score of 70%, including female Commissioner Palmer, and all marked that score on their interview sheets for Plaintiff. (TR, pg. 846, lns. 10-12; JT EXH 19-21). Each of them testified that Plaintiff's sex played no role in their scoring of her oral interview. (TR pgs. 625, lns. 24-25; 626, lns. 1-8; 701, lns. 5-11; 853, lns. 22-25; 854, ns. 1-10; 875, lns. 3-6). They would have given her the same score on the oral interview, given her performance, if she was male. (TR, pgs. 627, lns. 22-25; 628, ln. 1; 715, lns. 18-24; 875, lns. 11-14). In fact, another male candidate (Norm Johnson) received the same score. (TR, pg. 624, lns. 11-12 ; JT EXH 23, 38, 31-33). Oral interview scores of all applicants are reflected on JT Ex. 38. (TR, pgs. 699, lns. 15-21; 700, lns. 3-6). Given that Plaintiff's score was 70%, and Jensen's was 98%, Plaintiff's weighted score (35%) on the oral interview resulted in total a score of 24.5 for Plaintiff, and 34.3 for Jensen, such that Plaintiff was 9.8 points below Jensen overall. (TR, pg. 153, lns. 10-12). Officer Guttschow outperformed Plaintiff on the oral and written exams. (JT EXH 10, 18).

On May 15, 2006, Chief Foerster presented his "chief points." (TR, pgs. 496, lns. 21-15; 497, ln. 1; 626, lns. 9-11; 701, lns. 2-25; 702, lns. 1-2; JT EXH 39). Chief Foerster testified he was the only one to determine chief points.(TR, pg. 497, 11-14). He had been the direct supervisor of many of the candidates over his years of working with them as a sergeant,

lieutenant and commander. (TR, pg. 497, lns. 15-25). He also reviewed their most recent evaluations. (TR, pg. 498, lns. 1-4, D EXH 16, 54). In his opinion, a good sergeant should have the ability to make quick decisions, exercise good judgment, be a good communicator and act with confidence. (TR, pg. 499, lns. 25-25; 500, lns. 1-5). He determined chief points based on persons he believed to be most qualified for the position based on his past working relationship and what he knew of their performance. (TR, pgs. 500, lns. 6-8; 503, lns. 22-25; 504, lns. 1). He assigned points in order, starting with 100 for the top candidate, and then 90, 80, 70 and so forth for candidates thereafter. (TR, pg. 514, lns. 18-24). Chief Foerster ranked Plaintiff third in chief points, below Youngs and Jensen, but above 6 other male candidates. (JT EXH 39). He believed Plaintiff had potential, which is why he ranked her 3rd. However, he believed that compared to Jensen, she was less able to make quick decisions, and her critical thinking skills were inferior. (TR, pg. 502, lns. 7-18). There was no evidence presented that Foerster ranked Jensen ahead of Plaintiff due to her sex, as there was no any evidence presented that Plaintiff ranked 3, and all other males ranked 4-9 because of sex. However, the evidence demonstrated (and Plaintiff admitted) that even if Plaintiff was ranked 1st or 2nd, because of her poor performance on the oral interview, she would not have outranked Youngs or Jensen on the final eligibility list. (TR, pg. 162, lns. 1-15; ). *See Exhibit A for her actual total score/ranking, and her projected total score/ranking if she ranked 2nd in chief points.*

On May 18, 2006, Commissioner Palmer were calculated and documented on a professional score card total final scores for each candidate. (TR, pgs. 702, lns. 3-25, 703, lns. 1-21, 704, lns. 13-21; JT EXH 2, 6, 10, 14, 18, 22, 26, 30, 37). An initial eligibility list was created and published from the score cards. (TR, pgs. 705, lns. 16-25; 706, lns. 1-2, JT EXH 40). At that time, any candidate wishing to use military points could do so via written request. (TR, pgs. 705,

5

lns. 16-25; 706, lns. 1-2; JT EXH 1). Rick Moritz exercised that right, earning him 5 points. (TR, pgs. 872, lns. 23-25; 873, lns. 3- 8). Thereafter, a final eligibility list was published. (TR, pgs. 705, lns. 16-25; 706, lns. 1-2; JT EXH 42). The final eligibility list was determined by the Board. (D EXH 52; JT EXH 1). All promotions, by law, were required to be made from the top 3 on the eligibility list. *Id.* Accordingly, Plaintiff was 6th most qualified for the sergeant promotion.

### Investigations Assignment

Investigations is a unit within the Antioch Police Department. The Chief of Police determines assignments to investigations. (TR, pg. 155, lns. 18-22). A police officer who has not yet achieved the rank of Sergeant receives pay and benefits dictated by the union contract. (TR pgs. 179, ln 26; 180, lns. 1-6). Rate of pay is based on years of service. *Id.* The rate of pay and benefits extended by the contract is the same for all officers, regardless of whether they are assigned to patrol, investigations, or any other assignment. (TR, pg. 448, lns. 10-17).

Within the investigations unit, investigators work as school resource officers and investigators. (TR, pgs. 168, lns. 5-11; 449, lns. 3-7). The school resource officer position (SRO) allows the officer an opportunity to develop specific skills used in investigations. (TR, pgs. 449, lines 12-25; 450, lns. 1-7). In fact, prior to plaintiff rejecting the SRO position in May 2006, every person who worked as an investigator since the advent of the SRO, had first been an SRO. (TR, pg. 171, lns. 2-17). Plaintiff testified she never wanted to be an SRO. (TR, pg. 167, lns. 4-6). Within a police department, officers have preferences as to what positions different individuals may like to hold. (TR, pg. 457, lns. 5-14). However, Plaintiff specifically admitted that each position is equally important, with no one position being more important than another. (TR, pgs. 170, lns 24-25; 171, ln. 1; TR3, 457, lns. 5-14). Plaintiff admitted that it is merely a

matter of personal preference as to what position you wish to work. *Id.* Further, serving in one position over another does not enhance opportunities for advancement. (TR, pg. 179, lns. 18-14).

Foerster made Rick Moritz an investigator/detective in April 2006 with a June 1 start date since Moritz had been school resource officer for 3 years. (TR, pgs. 167, lns. 10-19; 464, lns. 4-6; 463, lns. 3-25; 969, lns. 14-16). After Moritz was assigned as an investigator/detective, an SRO position opened and was offered to Jensen, who had previously served in that role and had experience. (TR, pg. 464, lns. 1-20). A memo was issued on April 28, 2006, to all personnel, detailing the foregoing moves, effective June 1, 2006. (TR, pgs. 464, lns. 21-25; 465, lns. 1 -17; PL EXH 66). However, after Jensen placed second on the sergeant final eligibility list, and was being promoted to sergeant, the SRO position reopened. (TR, pg. 555, lns. 10-14). Thus, after the initial eligibility list for sergeant was published, Foerster had a conversation with Plaintiff wherein they discussed her placement on the list and Foerster offered Plaintiff was offered the SRO position. (TR, pgs. 522, lns. 7-25; 523, lns. 1-23). In this conversation, Plaintiff rejected his offer of the SRO position. (TR, pg. 529, lns. 20-25). Moreover, Plaintiff was defensive and defiant. (TR, pg.. 524, lns.. 3-6). She demanded to know the scores of other officers on the sergeant exam. (*Id.* at lns. 7-14). Foerster advised her she would need to see the commissioners about the same. (TR, pg. 88, lns. 1-7). She became accusatory about Foerster's integrity in the promotional process. (TR, pg. 524, lns. 3-11). Foerster advised her it was a bad career move to turn down the SRO position. (TR, pg. 177, pg. 4-6). Accordingly, when an investigator/detective position became open again in June, Foerster did not offer Plaintiff the position. (TR, pgs. 530, lns. 21-25; 531, lns. 1-3). He instead offered it to Aaron Fendel (male). *Id.* Foerster testified that he offered the position to Fendel because Plaintiff already rejected the SRO position, there was

no one with prior SRO experience to move into investigations, and Fendel had strong technical skills, good judgment, and good decision making skills. (TR, pgs. 530, lns. 13-25; 531, lns. 1-3).

## ARGUMENT

**I.     THERE WAS INSUFFICIENT EVIDENCE OF INTENTIONAL DISCRIMINATION IN THE SERGEANT PROMOTION**

To state a claim for failure to promote, Plaintiff must state a prima facie case either through direct evidence – i.e. admissions she was not promoted to sergeant or made detective because she is female; or indirect evidence. Plaintiff produced no direct evidence of discrimination. Instead, Plaintiff proceeded solely under the indirect method of proof. As set forth in *Adams vs. City of Indianapolis,* 742 F.3d 720 (7th Cir. 2014), in a failure-to-promote case like this one, Plaintiff's prima facie case requires a showing that (1) she belonged to a protected class; (2) she applied and was qualified for the position sought; (3) she was rejected for that position; and (4) her employer awarded the promotion to someone outside the protected class who was not better qualified. Additionally, she must prove that the employment action was materially adverse. *Moore vs. City of Chicago*, 126 Fed.App. 745 (7th Circ. 2005).

Once Plaintiff makes her prima facie case, the issue of burden shifting drops off. The only issue for the jury, and post-trial, is whether the record supports the resolution of the ultimate question of discrimination. *Millbrook vs. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Circ. 2002). The first step courts look to in that analysis is whether a plaintiff presented sufficient evidence of pretext. *Id.* In that regard, it is not enough for the jury to disbelieve the employer, rather, the plaintiff must present sufficient evidence by which the jury could reasonably believe plaintiff's explanation of intentional discrimination. *Id.*

In *Adams,* the Seventh Circuit held that the City's reliance on rankings on a promotional exam as the basis of promotions is a legitimate reason, which cannot be considered pretextual.

742 F.3d 720 (7th Cir. 2014). In *Adams*, African-American police officers and firefighters claimed they were not promoted because they were black, in circumstances where non-black candidates with higher composite scores were promoted before them. The Seventh Circuit in *Adams* recognized that the fourth element of plaintiff's prima facie case merged with the question of pretext. *Id.* The court held that "The candidates who won the promotions were better qualified because they had higher test scores and the plaintiffs [had] not come forward with any evidence to undermine the test scores as legitimate, non-discriminatory means of evaluating candidates for promotion." *Id.*

The Seventh Circuit has also addressed cases where a plaintiff alleges the testing process used to determine hiring or promotion was somehow flawed. In *Diettrich vs. Northwest Airlines,* 168 F.3d 961(7th Cir. 1999), the plaintiff therein alleged he was denied a rehire because of his age, and raised issues with the interview process claiming it was mishandled, and was administered unfairly to his detriment based on lack of interviewer training, poor format, a comparative shorter interview, and more difficult questions than given to younger candidates. The plaintiff also complained the interview did not otherwise elicit information regarding his extensive work history and experience. *Id.* at 965. Ruling that judgment as a matter of law should have been granted, the Seventh Circuit held that "[e]ven if this showed that Northwest did not know how to conduct a reliable selection process, none of these flaws hint of age bias to it…use of a subjective, even arbitrary, selection process is not proof of discrimination." *Id.* at 966.

A decision in the Northern District echoed the *Diettrich* analysis when the court granted summary judgment in favor of the Illinois State Police, sued by a female officer who alleged she was denied a promotion because of her sex. *Oseman-Dean v. Illinois State Police*, 2012 WL 1280226 (N.D.Ill. April 12, 2012).

Here, Plaintiff failed to present any evidence (much less sufficient evidence) of intentional discrimination by Defendant on the sergeant promotional exam. As discussed above, the qualifications for sergeant were dependent on Plaintiff's competitive performance on the promotional exams. Analyzing pretext first, as required in *Millbrook,* it is clear that as with the defendant in *Adams*, Defendant has maintained since day one that all promotions to sergeant were made in conformance with the promotional process final eligibility list. Without a doubt, Defendant articulated a legitimate and non-discriminatory reason for its promotional decisions, as supported by the decision in *Adams*.

Plaintiff placed where she did because of her poor performance on the oral interview. As discussed, she would not have been in the top 3 even if she was ranked 1st in chief points. Plaintiff presented no evidence at trial that the Defendant's reasons for promotion, and specifically her score on the oral interview, were phony, a lie. or a mask for discrimination. Indeed, she provided no testimony as to her own substantive performance at her interview contrary to the Commissioners' testimony as to how they arrived at their scores. (TR pg. 76-80). Moreover, she admits she has no evidence that her sex played a motivating role in her score, and the commissioners confirmed the same. There was no evidence that Chief Foerster, to whom plaintiff attributes certain discriminatory statements, played any role whatsoever in the oral interview score. In fact, all commissioners and Foerster testified he played no role, provided no information as to his "preferred" order of candidates, and in fact did not even provide his "chief points" to the Commissioners until 2 days after oral interviews were scored.

Because she had no evidence to support such a claim, Plaintiff took the approach of asking the jury to speculate that sex must have been a factor. In that regard, time and time again she enticed speculation by introducing evidence of non-decision maker opinions on her

qualifications vs. those of Jensen and Guttschow, as well as evidence attempting to attack the board for their process or lack of note taking. She then went on to attack Jensen and Guttschow with their disciplinary records. All of this was done, without any evidence that any decision was made because she is a woman and they are men. In fact, it is undisputed that the same sex-blind process and criteria were used for every candidate. Further, the evidence established many males ranked below Jensen and Guttschow. Why? Because, as with Plaintiff, Jensen and Guttschow outperformed them on the competitive aspects of the exam.

Further, as to chief points, which did consider past performance, the only person who was scored above Plaintiff, and whom she claims was less qualified based on past performance, was Jensen, who scored 2nd in chief points. Foerster scored all other male candidates below Plaintiff in chief points, including Guttschow, who ended up in the top three on the final eligibility list because he bested Plaintiff on both the **written and oral examinations**. (JT EXH 42). This alone shows that Foerster did not harbor a discriminatory animus against Plaintiff, as he ranked her 3 of 9 candidates, all of whom were male. Moreover, she presented no evidence that Foerster ranked Jensen above her because of sex. Foerster testified as to the criteria important to him in a sergeant, including his long work history with Jensen, and that he believed Jensen was superior in those skills he believed to be important for a sergeant. Even if the court were to assume that Jensen was ranked above Plaintiff in chief points because he was male, this ranking was not a materially adverse job action. *Moore vs. City of Chicago*, 126 Fed.App. 745 (7th Circ. 2005). This is because even if Foerster had ranked Plaintiff 2nd in chief points and Jensen 3rd, because of Plaintiff's poor interview score Jensen still would have ranked above Plaintiff on the final eligibility list (Ex. A). Furthermore, regardless of whether Plaintiff was "more qualified" in her past work performance than others ranked above her on the eligibility list is simply irrelevant,

11

and she agrees. She admits that regardless of qualifications *vis a vis* other candidates, by state law and the Board Rule, she could not be promoted ahead of even an officer she believed to be less qualified based on work performance and skill. (TR, pg. 120, lns. 2-25; pg. 121, lns. 1-3). She also agrees that this same point applies to seniority. Much of Plaintiff's case was playing the seniority card. However, once again, she agrees that aside from the maximum 5 percentage points, seniority has no role in determining the order of promotions. (TR, pg. 162, lns. 21-25; pg. 163, lns. 1-15).

Given the above, Plaintiff has failed to prove a prima facie case that she was denied a promotion based on her sex. She failed to prove Defendant's proffered reason for her lack of promotion was pretext, and considering the evidence as a whole, she has failed to show that Defendant intentionally discriminated against her. As in *Adams, Diettrich* and *Oseman-Dean,* there was no evidence from which a reasonable jury could conclude that Plaintiff was denied a promotion to sergeant because of her sex. Therefore, Defendant is entitled to judgment as a matter of law.

II. **THERE WAS INSUFFICENT EVIDENCE OF DISCRIMIONATION ON THE FAILURE TO ASSIGN TO INVSETIGATOR/DETECTIVE CLAIM**

   A. **The Failure to Assign to Investigator/Detectives Not Materially Adverse**

In addition to the requirements for proving intentional discrimination discussed above, Plaintiff must also prove the failure to be assigned to an investigator/detective position was a materially adverse job action. It is well settled that while adverse employment actions may extend beyond quantifiable losses, an employment decision must do more than merely upset the employee in order to be actionable. *Moore vs. City of Chicago*, 126 Fed.Appx. 745 (7th Circ. 2005). A purely lateral transfer that involves no reduction in pay and no more than a minor change in working conditions is not a materially adverse employment action. Moreover, as to job

12

titles, courts have held that mere change in job title is not, by itself, a materially adverse job action. *Crady vs. Liberty national Bank and Trust Co. of Indiana*, 993 F.2d 132 (7th Cir. 1993). For example, a bank employee who maintained the same "level" position, but job title changed from Assistant Vice President to collections officer, did not suffer a materially adverse job action. *Id.* At 136.

As to similar responsibilities and working conditions, Courts have held that changes in a police officer's assignment (between departments, etc.) where the pay and benefits remain the same, is not a materially adverse job action. In *Moore*, the plaintiff began working for the Chicago Police Department in 1964. He was promoted to sergeant in 1988, and assigned to the detective division. 126 Fed.Appx. at 746. In 1992, he was transferred from the detective division to the patrol division. The court rejected the argument that a transfer from detective to patrol was materially adverse. *Id.* The court stated that "his transfer is not the type of job transfer that could sustain his discrimination suit because it was to a materially equivalent position." *Id.*

Likewise in *O'Neal vs. City of Chicago*, 392 F.3d 909 (7th Cir. 2004), an African American female police sergeant was transferred from sergeant in the narcotics unit, to a beat sergeant, and claimed discrimination based on gender and race. *Id.* at 910. In affirming summary judgment, the Seventh Circuit concluded that "O'Neal's complaints about the transfer reveal only a "purely subjective preference for one position over another, which does not justify trundling out the heavy artillery of federal antidiscrimination law." *Id* at 913. Also, in *McKenzie vs. Milwaukee County*, 381 F.3d 619 (7th Cir. 2004), the plaintiff sheriff's deputy was assigned at one point in her career to the Drug Enforcement Unit, but was reassigned to the patrol bureau, which she claimed was a demotion. *Id.* The Seventh Circuit noted that the record supported that sheriff's deputies are frequently reassigned during the course of their careers and that the

plaintiff's transfer had no change on her pay or benefits. *Id*. at 625-626. The two positions "were equivalent other than in idiosyncratic terms that do not justify trundling out the heavy artillery of federal discrimination law." *Id.*

Here, plaintiff claimed she was discriminated against because she was not assigned from patrol to the detective/investigator position. As with the above cases, her claim failed as a matter of law in that a failure to assign to the detective/investigator position was not a materially adverse job action. She remained a police officer, with no change in pay, benefits or opportunities for advancement. Even she admits that each position in a police department is important, with no one position more important than another. She admits it is only a matter of preference which position an individual wishes to hold. Likewise, she admits that assignment to investigations was not a stepping stone to any other department.

Finally, while the Court rejected Defendant's argument to have the SRO position in the instruction on materially adverse, there is no question that when comparing whether plaintiff suffered a materially adverse job action, one must consider the fact that she was offered the SRO position, but rejected it. There is no material difference between SRO and investigator/detective. Being offered this position eliminated any claim she could make as to failure to assign to an investigations position, so Defendant is entitled to judgment as a matter of law.

### B. There was insufficient evidence by which a reasonable jury could conclude that the failure to assign to investigations was motivated by sex.

In addition, even if the failure to assign to a detective/investigator position was materially adverse, which is denied, there is no evidence said action was taken based on Plaintiff's sex. As discussed above, the SRO position was an investigations position. Plaintiff rejected it and, after doing so, she was not assigned to the detective position. She has no evidence the decision to assign Moritz or Fendel instead of her was based on the fact that they are male and she is female.

14

As to Moritz, he was given the detective/investigator position, as announced on April 28, 2006, because he had previously been an SRO for 3 years. Up and until Plaintiff rejected the SRO position offered to her in May 2006, every person assigned to an investigator position, since the advent of the SRO position, had first been an SRO. As to the investigator/detective position assigned to Fendel in June 2006, Foerster testified Plaintiff was not given the detective position because she turned downed the SRO position. This is a legitimate business reason to deny her the future assignment, and Plaintiff proffered no evidence to the contrary, let alone any evidence of pretext.

WHEREFORE, the jury verdict and subsequent judgment must be vacated on the sergeant promotional and detective/investigator assignment claim, and judgment must be entered for Defendant, Village of Antioch, and against Plaintiff.

Respectfully Submitted,

**VILLAGE OF ANTIOCH**

By: */s/ Lori A. Vanderlaan*
     One of Its Attorneys

Lori A. Vanderlaan
Allie M. Burnet
**Best, Vanderlaan & Harrington**
25 E. Washington Street, Suite 800
Chicago, Illinois 60602
(312)819-1100
(312)819-8062

## **CERTIFICATE OF SERVICE**

      I, the undersigned, an attorney, certify that I caused to be served the foregoing document(s) with attachment(s) referred to therein, if any, by way of this Court's electronic filing system, to all counsel of record at their addresses of record, on this 29th day of May, 2014.

                                                    */s/ Lori A. Vanderlaan*