**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAWN GERATY,** | ) | |
| **Plaintiff,** | ) | **Case No. 09 C 6992** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **VILLAGE OF ANTIOCH,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On November 7, 2013, a jury found that the Village of Antioch discriminated against Dawn Geraty, a police officer in the Village, on the basis of her gender by failing to promote her to the position of sergeant and by failing to transfer her to the position of detective. The jury awarded Geraty $250,000 in compensatory damages. On May 2, 2014, the clerk entered judgment in favor of Geraty and against the Village in the amount of $329,454.16, which included $61,186.72 in backpay and $18,267.44 in prejudgment interest.

The Village's motion to alter or amend the judgment based on Title VII's statutory damages cap is presently before the court. This motion turns on the number of employees who worked for the Village in 2006 and 2007. The parties dispute whether volunteer firefighters count as employees. For the following reasons, the Village's reliance on compensation, as reflected in payroll records, to establish that volunteer firefighters are not employees is unavailing. The parties shall confer and, based on the methodology detailed below, attempt to agree on whether a sufficient number of volunteer firefighters worked a sufficient number of weeks in 2006 and 2007 such that the Village had 201 or more employees in those years. The court will then determine if Geraty's compensatory damages should be capped at $100,000 (the

cap associated with 200 or fewer employees) or $200,000 (the cap associated with 201 or more

employees).

## I. TITLE VII'S DAMAGES CAP

42 U.S.C. § 1981a(b)(3) establishes damages caps in Title VII cases. It provides that:

> The sum of the amount of compensatory damages awarded . . . for future
> pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss
> of enjoyment of life, and other nonpecuniary losses . . . shall not exceed, for each
> complaining party —
>
> (A)  in the case of a respondent who has more than 14 and fewer than
>      101 employees in each of 20 or more calendar weeks in the current
>      or preceding calendar year, $50,000;
>
> (B)  in the case of a respondent who has more than 100 and fewer than
>      201 employees in each of 20 or more calendar weeks in the current
>      or preceding calendar year, $100,000; [and]
>
> (C)  in the case of a respondent who has more than 200 and fewer than 501
>      employees in each of 20 or more calendar weeks in the current or
>      preceding calendar year, $200,000 . . . .

## II. BACKGROUND

The Antioch Fire Department ("AFD") serves the Village of Antioch. The AFD consists

of volunteers, as the Village does not maintain a force of full-time firefighters. The Village pays

volunteer firefighters only for responding to emergencies. The Village does not pay volunteer

firefighters for time spent on non-firefighting tasks, such as participation in training programs.

The Village contends, based on its payroll records, that during 2006 and 2007, it

employed between 169 and 173 individuals on a non-volunteer basis and paid 27 volunteer

firefighters. Geraty contends that during this time period, the Village had at least 80 volunteer

firefighters (including the 27 paid volunteers). In support, she has submitted an affidavit from

John Lucas, a former Village volunteer firefighter. Dkt. 272-1 at 13. According to Lucas, to

work as an AFD volunteer firefighter, an individual must go through a hiring process, complete training, and be selected to serve by the Chief of the Fire Department.

The record before the court regarding the Village's relationship with its volunteer firefighting force is sparse. The Village asserts that only volunteers who received compensation, as reflected in its payroll records, count as employees for Title VII purposes. Based on this position, the Village relies exclusively on its payroll records to establish the number of employees. In response, Geraty stresses that the Village has not provided documents showing the full scope of work performed by volunteer firefighters (such as fire department run sheets) or disclosed whether it provides workers' compensation, insurance coverage, or other benefits to its volunteer firefighting force.

### III. ANALYSIS

The crux of the present dispute is whether AFD volunteer firefighters who provide services on an ad hoc basis are employees for the purposes of Title VII. Title VII's "definitions of 'employer' and 'employee' are circular – an employee is someone employed by an employer – and refer neither to volunteers nor to payment or receipt of remuneration." *Volling v. Antioch Rescue Squad*, No. 11 C 04920, 2012 WL 6021553 (N.D. Ill. Dec. 4, 2012) (citing 42 U.S.C. § 2000e(b) & (f)); *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (stating that "ERISA's nominal definition of 'employee' as 'any individual employed by an employer' . . . is completely circular and explains nothing").

The Village contends that volunteer firefighters are employees for Title VII purposes if they pass two hurdles which turn on the amount of money that volunteers received and the number of hours that they worked. First, the Village champions the use of the "payroll method"

to determine if volunteer firefighters are employees. According to the Village, an individual receives sufficient remuneration to be an employee if, "as a matter of economic reality" she is dependent on the business to which she renders service. (Dkt. 277, Def.'s Resp. at 6.) The Village asks the court to review payroll records to determine if the volunteer firefighters satisfied this test. Second, the Village contends that to the extent that payroll records show that a volunteer firefighter is financially dependent on the Village, a volunteer is an employee only if she worked for the Village for at least 20 weeks per calendar year in both 2006 and 2007. The Village also contends that elected officials, political appointees, and police commissioners are not countable as "employees."

Based on these positions, the Village asserts that it had between 101 and 200 employees in 2006 and 2007, resulting in a damages cap of $100,000. Geraty, on the other hand, contends that at least 80 volunteer firefighters were employees during this time, for a total of at least 249 employees. This would result in a damages cap of $200,000. For the following reasons, the "payroll method" described by the Village is inapplicable. In addition, the Village has failed to carry its burden of establishing that it did not have an employment relationship with its volunteer firefighters and is bound by its decision to attempt to establish this issue using payroll records. Finally, based on the current record, the court cannot determine the number of volunteer firefighters who worked for at least 20 weeks in 2006 and 2007. As detailed below, the parties shall confer and attempt to reach agreement on this issue.

## A.     The Payroll Method

According to the Village, if an individual is not on the Village's payroll, by definition, she cannot be an employee. This is consistent with the Seventh Circuit's pronouncement that:

> The United States Supreme Court has held that under 42 U.S.C. § 2000e(b) the payroll method should be used to determine whether an employment relationship exists between an individual and the alleged employer. *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 205-207 (1997). This is because "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* Under this method, to establish that the defendant is a Title VII employer, the plaintiff must introduce evidence of defendant's payroll records to prove that fifteen or more employees appeared on the employer's payroll for twenty or more calendar weeks in either the year of the alleged violation or the preceding year. *Walters*, 519 U.S. at 206. *See also Abbott v. Minooka Volunteer Fire Department*, 1998 WL 102719 (N.D.Ill.).

*Mizwicki v. Helwig*, 196 F.3d 828, 831 (7th Cir. 1999).

Thus, the absence of payroll records can doom an individual's claim that she is an employee if she seeks to establish her employment status using unreliable evidence. For example, as the Village notes, in *Mizwicki*, the Seventh Circuit affirmed a district court's grant of summary judgment in favor of the defendant due to the plaintiff's reliance on a witness' "off-the-cuff" estimate about the number of employees and her failure to introduce any documentary evidence, such as payroll records. *Id.* at 831-32. Similarly, in *Ost v. W. Suburban Travelers Limousine, Inc.*, the Seventh Circuit held that affidavits about the number of employees were insufficient because they were vague and relied on evidence, such as payroll records, that were outside the record. 88 F.3d 435, 339-40 (7th Cir. 1996). Neither *Mizwicki* nor *Ost* address whether volunteers can be employees as these cases did not involve volunteers. Accordingly, they do not stand for the proposition that the amount of compensation that a volunteer receives – as shown by payroll records – determines if she is an employee under Title VII.

Although the payroll method "most readily" shows whether an individual is an employee, it is not the sole method for resolving this issue. *Mizwicki*, 196 F.3d at 831. Instead, "[r]eview of payroll records is usually the starting point to determine whom the defendant employed during

the relevant time period" since these records are generally easy to obtain and analyze. *See Smith v. Castaways Family Diner*, 453 F.3d 971, 974 (7th Cir. 2006). *Volling v. Antioch Rescue Squad*, a Title VII case against a provider of emergency medical services in the Village that both sides discuss, is illustrative.

In *Volling*, the plaintiffs were unpaid volunteers who contended that they were the victims of discrimination in the workplace. 2012 WL 6021553, at *8. The Village, as in this case, contended that payroll records did not show that the volunteers were employees. In considering this issue, the *Volling* court examined Supreme Court cases interpreting statutory definitions of employee that, like Title VII, provide that an employee is someone employed by an employer. *Id*. at *7. As the *Volling* court recognized, "[a]bsent statutory guidance, the Supreme Court has instructed courts to use the common law principles of agency in lieu of a substantive definition of "employee." *Id*. (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (considering ERISA's definition of "employee," which is identical to Title VII's definition) and *Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 444-45 (2003) (reaffirming *Darden*'s approach in context of Americans with Disabilities Act, which also defines an employee as "an individual employed by an employer")).

When determining if an individual is an "employee" under common law agency principles, the court considers "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party;

whether the hiring party is in business; the provision of employee benefits; and the tax treatment

of the hired party." *Darden*, 503 U.S. at 323-34 (quoting *Cmty. for Creative Non-Violence v.*

*Reid*, 490 U.S. 730, 751–52 (1989)).  Because there is  "no shorthand formula or magic phrase

that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed

and weighed with no one factor being decisive." *Id.* (quoting *NLRB v. United Ins. Co. of*

*America*, 390 U.S. 254, 258 (1968)).

       The EEOC's Compliance Manual contains a similar non-exhaustive list of factors that are

relevant to whether an individual is an employee.  *See* EEOC Compliance Manual, § 2-III-A-1

("Who is an 'employee'?") (http://www.eeoc.gov/policy/docs/threshold.html#2-III-A-1).[1]  It also

---

[1]  Specifically, § 2-III-A-1 of the Compliance Manual states that:

The question of whether an employer-employee relationship exists is fact-specific and depends on whether the employer controls the means and manner of the worker's work performance.  This determination requires consideration of all aspects of the worker's relationship with the employer.  Factors indicating that a worker is in an employment relationship with an employer include the following:

- The employer has the right to control when, where, and how the worker performs the job.
- The work does not require a high level of skill or expertise.
- The employer furnishes the tools, materials, and equipment.
- The work is performed on the employer's premises.
- There is a continuing relationship between the worker and the employer.
- The employer has the right to assign additional projects to the worker.
- The employer sets the hours of work and the duration of the job.
- The worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job.
- The worker does not hire and pay assistants.
- The work performed by the worker is part of the regular business of the employer.
- The employer is in business.
- The worker is not engaged in his/her own distinct occupation or business.
- The employer provides the worker with benefits such as insurance, leave, or workers' compensation.

includes specific guidance for determining if volunteers are employees. *See id*. at § 2-III-A-1(c) ("an individual may be considered an employee of a particular entity if, as a result of volunteer service, [she/he] receives benefits such as a pension, group life insurance, workers' compensation, and access to professional certification, even if the benefits are provided by a third party" or "if the volunteer work is required for regular employment or regularly leads to regular employment with the same entity").

Despite the Supreme Court's reliance on agency principles to determine if individuals are employees for the purposes of Title VII, there is a Circuit split regarding the need to prove that a volunteer receives compensation before reaching any other elements germane to whether the volunteer is an employee under Title VII. The Second, Fourth, Fifth, Eighth, Tenth, and Eleventh Circuits follow the so-called "threshold remuneration" rule. *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 334-35 (5th Cir. 2013). "Under this test, courts conduct a two-step inquiry by requiring that a volunteer first show remuneration as a threshold matter before proceeding to the second step – analyzing the putative employment relationship under the common law agency test. Remuneration may consist of either direct compensation, such as a salary or wages, or indirect benefits that are not merely incidental to the activity performed." *Id*.

- The worker is considered an employee of the employer for tax purposes (*i.e.*, the employer withholds federal, state, and Social Security taxes).
- The employer can discharge the worker.
- The worker and the employer believe that they are creating an employer-employee relationship.

This list is not exhaustive. Other aspects of the relationship between the parties may affect the determination of whether an employer-employee relationship exists. Furthermore, not all or even a majority of the listed criteria need be met. Rather, the determination must be based on all of the circumstances in the relationship between the parties, regardless of whether the parties refer to it as an employee or as an independent contractor relationship.

Importantly, the Circuits following the "threshold remuneration" rule do not require monetary remuneration: they either explicitly or implicitly also look to whether an individual receives non-financial benefits when considering if an employment relationship exists. *See id*. at 439-40 (volunteer firefighter was not an employee because she received "insignificant" benefits consisting of $78 in compensation, a life insurance policy, a uniform and badge, and emergency/first responders' training); *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997) (an intern who received no wages or other benefits was not an employee under Title VII because the receipt of compensation or other benefits is an essential part of an employer-employee relationship); *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) (holding that "a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits," including a retirement pension); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220-22 (4th Cir. 1993) (holding that employment status of an unpaid volunteer firefighter presented a fact question given her receipt of indirect benefits such as a disability pension and access to a group life insurance plan constituted "indirect but significant remuneration" supporting an employment relationship, or were "inconsequential incidents of an otherwise gratuitous relationship"); *see also Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 74 (8th Cir. 1990) (members of a female rodeo competitor's association were not "employees" under Title VII because "[c]ompensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, but it is an essential condition to the existence of an employer-employee relationship" and members do not have any duty of service to the association); *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998)

(holding that a plaintiff could not establish an employment relationship for purposes of the Americans with Disabilities Act because he was a medical student who did not receive compensation for work he performed); *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1243-44 (11th Cir. 1998) (holding an officer-director who did not receive any compensation was not an "employee" within the meaning of Title VII because "Congress did not intend Title VII to protect mere titles or labels; an individual who sues only to maintain a purely gratuitous working relationship does so without the protection of that statute").

In contrast, when evaluating whether a volunteer is an employee under Title VII, the Sixth and Ninth Circuits consider remuneration as a non-dispositive factor, along with the other common law agency factors. In *Bryson v. Middlefield Volunteer Fire Dept., Inc.*, the Sixth Circuit stressed that the Supreme Court has held that "when evaluating a particular relationship, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." 656 F.3d 348, 353-54 (6th Cir. 2011) (quoting *Darden*, 503 U.S. at 324) (internal quotations omitted). It thus stated that because "no one factor, including remuneration, is decisive . . . no one factor is an independent antecedent requirement." *Id.* at 354. Accordingly, it reversed the district court's grant of summary judgment against an unpaid volunteer firefighter who received non-wage benefits such as worker's compensation and insurance coverage, gift cards, and access to an emergency fund, and directed the district court to weigh remuneration and "all other incidents of the relationship" on remand. *Id.*

In *Fichman v. Media Center*, the Ninth Circuit considered whether directors and independent producers of a nonprofit media company were "employees" under the Americans

With Disabilities and Age Discrimination in Employment Acts. 512 F.3d 1157, 1160 (9th Cir. 2008). The *Fichman* court held that:

> This question is governed by the United States Supreme Court's analysis in *Clackamas* . . . . [In that case,] the Court addressed whether physicians that were also directors and shareholders of a clinic were employees for purposes of the ADA. The Court noted that Congress had intended the word "employee" to describe "the conventional master-servant relationship as understood by common-law agency doctrine." *Id*. at 445 (internal quotation marks and citation omitted). The Court then described six factors relevant to determining whether a director is an employee:
>
> •        Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> •        Whether and, if so, to what extent the organization supervises the individual's work
>
> •        Whether the individual reports to someone higher in the organization
>
> •        Whether and, if so, to what extent the individual is able to influence the organization
>
> •        Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> •        Whether the individual shares in the profits, losses, and liabilities of the organization.
>
> *Id*. at 449-50. The Court noted that these factors were not exhaustive, and that whether an individual is an employee depends on "all of the incidents of the relationship[,] with no one factor being decisive." *Id*. at 450 n.10 (internal quotation marks and citation omitted).

*Id*. at 1160. The *Fichman* court weighed all of these factors – including non-monetary compensation received by the members of the defendant's Board of Directors – and concluded that the directors were not employees. *Id*. at 1160-61.

The Seventh Circuit has not weighed in on whether a district court must find that a volunteer received compensation before that court may consider other factors that are relevant to

evaluating an individual's relationship with her putative employer. However, in dicta, it has criticized the "tyranny of labels" in a case where a partnership reconfigured itself as a "de facto corporation" and the parties disputed whether the EEOC was required to treat the "partners" as employers. *E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 705 (7th Cir. 2002). The Seventh Circuit looked to the Supreme Court's analysis in *Darden*, explaining that "[t]he Court could have said that an employee is anyone who is called an employee" but instead, considered all of the factors relevant to the general common law of agency. *Id.* The Seventh Circuit also considered authority relating to the employer's right to control the worker's work. *Id.* (citing *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996)). Ultimately, the Seventh Circuit found that the definition of employee did not turn on "mechanical tests." *Id.*

Ultimately, the Village asks this court to apply a mechanical test: if an individual is salaried, as reflected in payroll records, the Village concedes that she is an employee for the purposes of the Title VII damages cap. On the other hand, if she receives non-monetary benefits, she is not an employee, regardless of what those benefits are. The court finds that this approach is at odds with Supreme Court precedent directing the court to consider the common law principles of agency when considering if an individual is an employee. *See Darden*, 503 U.S. at 323; *Clackamas*, 538 U.S. at 444-45. Moreover, as discussed above, even if the threshold-remuneration test is the correct standard (an issue which this court need not reach), an individual can be compensated and, therefore, be an employee, based on the receipt of benefits other than a salary. In other words, if the Village's volunteer firefighters received benefits other than a salary, they can still count as employees, even under the more restrictive threshold-remuneration test.

The Village's argument that status as an employee turns on the receipt of a paycheck memorialized in payroll records is, therefore, incorrect. It is also problematic as, based on its position that payroll records were dispositive, the Village refused to provide Geraty with any information about any non-monetary benefits given to volunteer firefighters. Thus, based on the current record, the court cannot determine if the volunteer firefighters are employees regardless of whether it follows the more restrictive threshold-remuneration test (like the Second, Fourth, Fifth, Eighth, Tenth, and Eleventh Circuits) or considers all of the factors relevant to the existence of an employer-employee relationship (like the Sixth and Ninth Circuits). The Village appears to be responsible for the limited record. The court thus turns to an issue that neither side directly addresses – whether the Village or Geraty bears the burden of proving the number of employees when the amount of the damages cap is disputed.

**B.      Burden of Proof**

A defendant bears the burden of proof in establishing the number of employees for the purposes of establishing entitlement to a Title VII damages cap. *Mendez v. Perla Dental*, No. 04C4159, 2008 WL 821882, at *4 (N.D. Ill. Mar. 26, 2008) ("Based on the evidence presented, and Defendants' conspicuous failure to provide conclusive information or documentation, we conclude that Defendants have failed to carry their burden" of showing that "damages should be reduced to $50,000, the lower of the two possible caps"), *aff'd in part on other grounds* by 646 F.3d 420 (7th Cir. 2011); *see also Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 176 (1st Cir. 2011) ("the defendant employer must affirmatively move to impose the [Title VII damages] cap and to present relevant evidence"); *Soto v. LCS Corrections Services, Inc.*, No. 2:12-CV-130, 2013 WL 4012627, at *7 (S.D. Tex. Aug. 5, 2013) (collecting cases holding that

"it is the defendant employer seeking to impose a Section 1981a(b)(3) cap on punitive damages that bears the burden of proving that it employed fewer than the requisite number of employees").

Here, as noted above, the Village presented information about the subset of volunteer firefighters who received compensation for responding to emergencies during the relevant time period. It did not point to evidence about other benefits or forms of compensation, if any, received by volunteer firefighters. This case was tried in November 2013. The parties have litigated a series of post-trial motions. Geraty's brief on the number-of-employees issue attaches documents memorializing her unsuccessful efforts to expand the record. The Village has had ample opportunity to produce information other than payroll documents but opted not to do so.

Moreover, while courts considering whether volunteers are employees under Title VII have used differing analyses, authority regarding the burden of proof for establishing which damages cap is applicable is consistent. The Village chose to focus exclusively on payroll records to establish whether the volunteer firefighters count as employees. At this point – almost a year after the jury's verdict – it would unreasonably prolong litigation of this 2009 case to allow the Village to start over with new and much more extensive discovery about the volunteer firefighters.

The court also notes that when formulating its litigation strategy, the Village had the benefit of the 2012 *Volling* opinion, which extensively discussed and ultimately rejected the Village's contention that the payroll method controlled whether its volunteer emergency medical personnel are employees for the purposes of Title VII. *See Volling*, 2012 WL 6021553, at *8 (rejecting the Antioch Rescue Squad's argument that "compensation is the sine qua non of Title

-14-

VII coverage").  The Village dismisses *Volling* on the grounds that it is inapplicable because it addressed whether volunteers are employees for purposes of establishing Title VII standing. Nevertheless, the Village cites to numerous Title VII standing cases for points it wishes to press. *See, e.g.*, Dkt. 277, Def. Memo., at 2 (citing *Mizwicki*, 196 F.3d at 831-32), 6 (citing *Juino*, 717 at 439) and 8 (citing *Abbott v. Minooka Volunteer Fire Dept.*, No. 1998 WL 102719, 1998 WL 102719 (N.D. Ill. Feb. 25, 1998)).  The Village was entitled to pursue the strategy of its choice, but is bound by its decision to put all of its eggs into the payroll basket and forgo any other method of proof regarding the volunteer firefighters.

In sum, given the Village's focus on payroll records to support its claim that volunteer firefighters are not employees, it has failed to carry its burden of showing that the volunteer firefighters in 2006 and 2007 are not employees for purposes of the damages cap under the threshold-remuneration test and the more expansive agency test, which both consider non-monetary compensation.  The Village, however, has a fall-back argument:  even if the cadre of 80-plus volunteer firefighters are employees, Geraty has not shown that they worked at least 20 calendar weeks in both 2006 and 2007.

**C.      20 or More Calendar Weeks Per Year**

The statutory cap for compensatory and punitive damages "in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year [is] $200,000."  42 U.S.C. § 1981a(b)(3)(C).  The Village, once again, contends that payroll records show that the volunteer firefighters did not work for 20 or more calendar weeks in 2006 and 2007 and, therefore, are not employees for the purposes of Title VII.  The court begins by considering which side bears the burden of proof with respect to

§ 1981a(b)(3)(C)'s twenty-week requirement. For the following reasons, the Village bears the burden of proof and has failed to establish that the volunteer firefighters did not meet this requirement.

### 1. Burden of Proof

The Village addresses the burden of proof indirectly in support of its contention that regardless of their compensation, volunteer firefighters must work at least 20 weeks per year to count as employees. Specifically, the Village directs the court's attention to *Abbott*, a Title VII gender discrimination case brought by a volunteer firefighter. In that case, the court considered whether the defendant had enough employees to qualify as an employer under Title VII and, therefore, be subject to suit under Title VII. 1998 WL 102719 at *2. Because subject matter jurisdiction was at issue, the plaintiff had the burden of submitting "affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction." *Id.*; *see also Mizwicki*, 196 F.3d at 831-32 (when attempting to establish liability, the plaintiff bears the burden of showing that the defendant has the requisite number of employees to be an employer under Title VII).

In connection with its discussion of *Abbott*, the Village asserts that Geraty failed to establish that a sufficient number of volunteer firefighters worked at least 20 weeks per year in 2006 and 2007. It asks, "[W]hich of those individuals actually performed work in 2006? Which performed work in 2007? What weeks did they work in either year? Plaintiff has provided no such information in this regard. She provided the Affidavit of one volunteer who stated he got paid when he worked, or was trained, etc." (Dkt. 277, Def.'s Resp., at 9-10.) In the context of deciding which Title VII damages cap applies, these questions are irrelevant because as

discussed above, the Village, not Geraty, bears the burden of affirmatively establishing that its desired damages cap is applicable. *See Mendez*, 2008 WL 821882, at *4; *Hernandez-Miranda*, 651 F.3d at 176; *Soto*, 2013 WL 4012627, at *7. Thus, to the extent that the Village is attempting to require Geraty to bear the burden of proof, its position is unavailing.

### 2.  The 20-Week Requirement

This brings the court to the question of whether the Village had more than 200 employees in 20 or more calendar weeks in 2006 and 2007. *See* 42 U.S.C. § 1981a(b)(3)(C). To address this issue, the Village turns yet again to its payroll records and asserts that these records do not show that the 80-plus volunteer firefighters worked for at least 20 weeks per year in 2006 and 2007. As noted above, the $200,000 damages cap applies if the Village had between 201 and 500 employees during both 2006 and 2007. The Village, therefore, need not establish that all of the volunteer firefighters worked fewer than 20 calendar weeks during this time period, or that the same volunteer firefighters worked at least 20 calendar weeks in 2006 as well as 2007. Instead, to establish that the $100,000 damages cap applies, the Village must show that the total number of employees in each year does not exceed 200.

Geraty contends that the Village's volunteer firefighters (who necessarily work part-time on an as needed basis and presumably fight fires for less than a full workday at a time) should be counted like full-time employees for purposes of the Title VII damages cap. In *Walters*, the Supreme Court grappled with the question of when part-time employees count for Title VII purposes.[2] 519 U.S. at 208-12. In that case, the employer contended that only individuals who

_____

[2]  The Supreme Court's decision in *Walters* parsed out when individuals are employees under 42 U.S.C. § 2000e(b), which provides that "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in

-17-

received monetary compensation for work performed on a given day are "employees" under Title VII. The Supreme Court disagreed, explaining that "the ultimate touchstone . . . is whether an employer has employment relationships with [the requisite number of] individuals for each working day in 20 or more weeks during the year in question." *Id*. at 212.[3]

The Court then adopted a definition of "employee" dependent on the worker's start and end dates. *Id*. at 211 ("Under the interpretation we adopt . . . all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure."). Under this approach, "an employee who works irregular hours, perhaps only a few days a month, will be counted toward the . . . [number of employees] for every week in the month." *Id*. at 210. The Seventh Circuit has not considered the precise issue before this court. *Walters*, however, teaches that a volunteer firefighter is an "employee" if she has an employment relationship with the Village based on common law principles of agency for a specific period of time, even if she does not receive compensation for fighting fires during that time period.

---

each of twenty or more calendar weeks in the current or preceding calendar year . . . . " *See Walters*, 519 U.S. at 208-12. This portion of this definition pertaining to twenty calendar weeks is almost identical to the reference to twenty calendar weeks in the damages cap. *See* 42 U.S.C. § 1981a(b)(3)(C) (referring to the number of employees "in each of 20 or more calendar weeks in the current or preceding calendar year"). Thus, although *Walters* analyzes a different statutory provision, it is germane to the statutory interpretation issue presently before the court.

 [3] Although it characterized this test as the "payroll method," the Court expressly rejected the employer's contention that an employment relationship exists only if the individuals in question appear on the employer's payroll. *Walters*, 519 U.S. at 211. It then held that the existence of an employment relationship "under traditional principles of agency law" determined if an individual counted as an employee. *Id*. Thus, while at first glance, the Supreme Court's use of the term "payroll method" appears to support the Village, the underlying reasoning does not demonstrate that the Village's position about payroll records is correct.

The court acknowledges that this conclusion is at odds with the First Circuit's determination that under *Walters*, "[p]art-time workers [including seasonal workers] are counted as employees for each day they worked between arrival and departure, and those times may be added to reach the threshold number." *See Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34, 44-45 (1st. Cir. 2013) (citing *Walters*, 519 U.S. at 207). This counting method turns on whether each part-time or seasonal worker was at work on any given day between their start and stop dates.

This court does not find *Aly* persuasive. In *Walters*, the Supreme Court criticized a similar methodology, explaining that looking at what each person did during each workday:

> would turn the coverage determination into an incredibly complex and expensive factual inquiry. Applying it in the present cases required the parties to spend 10 months poring over [the employer's] payroll registers, timecards, work diaries, and other timekeeping records to determine, for each working day of a 2–year period, how many employees were at work, how many were being paid . . . salaries, how many were on paid holiday leave, how many were on paid vacation leave, and how many were on paid sick leave. For an employer with 15 employees and a 5-day workweek, the number of daily working histories for the 2-year period is 7,800. The problems with [the employer's] compensation-based approach are magnified when employees are "compensated" on days off in ways less clear cut than holiday, vacation, or sick leave. If, for example, employees accumulate seniority rights or entitlements to holiday bonuses on their unpaid days off, it would be necessary to determine (or litigate) whether they are "receiving compensation" on those days for purposes of the coverage determination.

*Id*. at 210-11. It is also inconsistent with the EEOC's advice to count temporary employees, as long as they have an employment relationship. *See* EEOC Compliance Manual, § 2-III(B)(1)(a) ("To count employees, determine the number of employees on an employer's payroll; exclude individuals who are not employees, *e.g.*, discharged/former employees or independent contractors. Add to that figure any other individuals who have an employment relationship with

the employer, such as temporary or other staffing firm workers.")  Finally, as discussed above,

the Supreme Court has held that an individual who works for only a few days per month

nevertheless counts toward the number of employees for the entire month.  *Walters*, 519 U.S. at

210.

For these reasons, the court concludes that the First Circuit's focus on the number of days

that a part-time employee works during the relevant time period, *Aly*, 711 F.3d at 44-45, is not

germane to whether the part-time worker is an employee for the purposes of Title VII.

Accordingly, volunteer firefighters with an employment relationship with the Village during

2006 and 2007 for at least 20 weeks per calendar year count as employees for purposes of the

Title VII damages cap.  As detailed above, the Village bears the burden of establishing if

volunteers are countable because: (1) they had an employment relationship with the Village (2)

for a sufficient length of time.

To assess whether the Village carried its burden with respect to the twenty-week

requirement, the court turns to the limited information that is available.  Based on its payroll

records, the Village asserts that it had between 169 and 173 employees during the relevant time

period.  The December 2006 payroll report reflects that the Village wrote 27 checks to

individuals classified as volunteer firefighters.  (Dkt. 272-1, Pl.'s Mot., Ex. 5.)  These 27

individuals appear to be included in the 169-173 employee range.  However, other volunteer

firefighters who did not receive paychecks during this period are not included because the

Village viewed the payroll method as dispositive.  Given the Village's representation that it had

between 169 and 173 employees in 2006 and 2007, only a subset of the 80-plus additional

volunteer firefighters (specifically, 28 to 32 of this group, as opposed to all of the additional

volunteer firefighters) need to be counted as employees in this time period to reach the 201 employee minimum necessary for the $200,000 damages cap to apply.[4]

The records and demonstrative charts summarizing the payroll records provided by the parties do not allow the court to determine the beginning and end dates for the 80-plus volunteers who were approved to fight fires in 2006 and 2007. This information is critical, as volunteer firefighters count as employees for each day of the workweeks between their arrival and departure dates. *See Walters*, at 209-11. Although the Village failed to carry its burden of proof regarding the 20-week requirement, the data necessary to determine how many volunteer firefighters satisfied this requirement in 2006 and 2007 should be readily ascertainable. Thus, the Village will be permitted to establish this point. Accordingly, the parties are directed to confer and attempt to agree on whether a sufficient number of volunteer firefighters worked a sufficient number of weeks in 2006 and 2007 such that the Village's total number of employees exceeded 200 in those years. The court will then reduce Geraty's compensatory damages by either $50,000 or $150,000.[5] Because it does not currently appear that determining whether elected officials, political appointees, and police commissioners count as employees will affect these calculations, the court will not reach this issue.

---

[4] Specifically, the Village asserts that on the low end of the range, it had 169 employees in 2006 and 2007. If that is the case, 32 volunteer firefighters need to be counted as employees in this time period to reach the 201 employee minimum. On the high end of the Village's range, if the Village had 173 employees, 28 volunteer firefighters need to be counted as employees in the relevant time period to reach the 201 employee minimum.

[5] The court notes that it will apply the applicable damages cap to the $250,000 in compensatory damages awarded by the jury, not the total of $329,454.16 in damages, which included awards for backpay and prejudgment interest. *See* 42 U.S.C. § 1981a(b)(2) (excluding backpay and interest on backpay from the definition of compensatory damages).

## IV.  CONCLUSION

The portion of the Village's motion to alter or amend the judgment [226] regarding the Title VII damages cap remains pending.  The parties are directed to confer and attempt to agree on whether a sufficient number of volunteer firefighters worked a sufficient number of weeks in 2006 and 2007, based upon each volunteer's start and end dates, such that the Village's total number of employees was 201 or greater in those years.  They shall file a joint status report (or separate reports, if necessary) by November 14, 2014.  The court will then determine if Geraty's compensatory damages should be capped at $100,000 (the cap associated with 200 or fewer employees) or $200,000 (the cap associated with 201 or more employees).


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:  November 7, 2014