**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAWN GERATY, | ) | |
|     Plaintiff, | ) | Case No. 09 C 6992 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| VILLAGE OF ANTIOCH, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Village of Antioch's motion to reconsider the court's November 7, 2014 order is denied. The remaining portion of the Village's motion to alter or amend the judgment, which seeks to reduce plaintiff Dawn Geraty's compensatory damages based on Title VII's damages cap, is granted to the extent that Geraty's damages are capped but denied to the extent that the Village contends that a cap of $100,000 is applicable as the court finds that Geraty's compensatory damages are properly capped at $200,000.

**I. MOTION TO RECONSIDER**

**A.    Legal Standard**

The court has the inherent authority to reconsider its interlocutory orders because such orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule 54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). A motion to reconsider an interlocutory order serves a limited purpose in federal litigation; it is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier. *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). Rather, a

motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or party's contention that the court ruled on an issue that was not properly before it. *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

**B.     Background**

For the purposes of this order, familiarity with the court's prior orders is assumed. In a nutshell, a jury found that the Village discriminated against Geraty, a police officer in the Village, on the basis of her gender by failing to promote her to the position of sergeant and by failing to transfer her to the position of detective. The jury awarded Geraty $250,000 in compensatory damages. On May 2, 2014, the clerk entered judgment in favor of Geraty and against the Village in the amount of $329,454.16, which included $61,186.72 in backpay and $18,267.44 in prejudgment interest. The judgment is still not final because a single issue remains: which Title VII damages cap is applicable. If the Village had 200 or fewer employees during the relevant time period, Geraty's compensatory damages are capped at $100,000, but if the Village had 201 or more employees, a $200,000 cap applies.

Over a year after this employment discrimination case was tried in November 2013, the court once again considers the Title VII damages cap issue. The court first considered this issue in its November 7, 2014 order addressing the Village's motion to alter or amend the judgment. That motion turned on whether volunteer firefighters in 2006 and 2007 count as employees for the purposes of Title VII. In its original submissions about the number of employees, the Village contended, based on its payroll records, that during 2006 and 2007, it employed between 169 and

173 individuals on a non-volunteer basis, including 27 volunteer firefighters.[1] Geraty asserted that in 2006 and 2007, the Village had at least 80 volunteer firefighters (including the 27 paid volunteers).

In its November 7, 2014 order, the court rejected the Village's reliance on compensation, as reflected in its payroll records, to establish that volunteer firefighters are not employees. Specifically, the court found that an individual's status as an employee did not turn on whether she received paychecks that were memorialized in payroll records. The court also observed that based on the Village's position about payroll records, the Village had refused to provide Geraty with information about any non-monetary benefits given to volunteer firefighters. The court then concluded that Village's reliance on payroll records to support its claim that volunteer firefighters are not employees was insufficient to carry the Village's burden of showing that the volunteer firefighters in 2006 and 2007 were not employees.

This did not resolve the damages cap issue, however, as the Village had a fall-back argument: even if the cadre of 80-plus volunteer firefighters consists of employees, Geraty had not shown that the volunteers worked at least 20 calendar weeks in both 2006 and 2007. The court held that the Village had the burden of proof on this issue and directed the parties to attempt to reach agreement. That effort proved fruitless so a series of briefs with supporting materials followed, which are now before the court.

---

[1] The 169-173 range was based on a July 31, 2014 affidavit from Joy McCarthy, the Village's Director of Finance. (Dkt. 247-1 at ¶¶ 7-8) ("Taking into account all full time, part time, seasonal part time, and volunteer firefighters personnel as of June 1, 2006, the Village of Antioch had a total of 169 employees . . . Taking into account all full time, part time, seasonal part time, and volunteer firefighters personnel as of July 22, 2007, the Village of Antioch had a total of 173 employees").

## C.     The Village's Arguments

The Village first contends that the court's November 7, 2014 order was based on a misapprehension of fact. According to the Village, the record showed that the volunteer firefighters received no benefits of any type other than monetary compensation (reflected in payroll records) each time they responded to a call for firefighting assistance. In support, the Village directs the court's attention to the September 17, 2014 declaration of Joy McCarthy. (Dkt. 277-1.) In that declaration, McCarthy states that:

> Volunteer firefighters were reflected on the payroll journals as "Volunteer Fire." They did not work a regular schedule, but instead were on a roster of potential people who could be called should the fire safety employees needs assistance in responding to a call. **They received no Village of Antioch benefits.** The volunteer firefighters were paid, if in fact they assisted in the response to a call. In that regard, they would be paid on the regular payroll covering the pay period in which they did the work. Said volunteer firefighters were also paid for any time they spent in regard to training, meetings, etc. In this regard, they would receive said payment on the payroll date following the pay period in which they performed the work, training, attendance at a meeting, etc. If they performed no work, training, meeting attendance etc., then they would not receive a check and would not be on the payroll.

(*Id*. at ¶ 8) (emphasis added.)

Given the context in which this statement was presented (that an individual's status as an employee exclusively turns on payroll records), the court previously believed that McCarthy was expressing that the volunteer firefighters did not receive monetary benefits other than the salary paid for each response for assistance. Under this interpretation, the volunteer firefighters still could have received non-salary benefits, such as workers' compensation or survivor's benefits.[2]

---

[2] The Village appears to be asserting that volunteer firefighters perform dangerous work, such as entering burning buildings, for a modest payment per response, but with no other benefits (*e.g.*, worker's compensation, survivors, or disability coverage). The precise parameters of the Village's relationship with its volunteer firefighters is, however, unclear.

However, today the Village argues that this statement meant that the volunteers received no benefits whatsoever other than a monetary payment for each response to a fire.

This is revisionist history. Prior to the motion to reconsider, the Village's position was clear and consistent – the "payroll method" (*i.e.*, payroll records showing that an individual received monetary compensation) determines if an individual is an employee so it need only produce payroll records. Based on this position, the Village argued that remuneration, as shown in payroll records, was the only relevant consideration. The Village did not respond to discovery about non-salary benefits provided to volunteer firefighters because, in its view, the payroll records were dispositive. Thus, the parties extensively briefed whether the so-called "payroll" method was the correct way to determine if an individual was an employee. The court ruled against the Village and moved on to its fall-back argument about the number of hours worked by volunteer firefighters per year, which remains pending.

A motion for reconsideration is not the proper time to raise a new argument. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (motions for reconsideration are not a vehicle by which a party may reframe arguments it previously presented to the court). The court's prior orders about the damages cap issue were "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco. Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill.1988). Having lost on its "payroll method" argument, the Village cannot start anew based on its current emphasis on a single sentence in a declaration that Geraty cannot challenge due to this case's procedural posture.

The Village is also not entitled to an evidentiary hearing based on the sentence in McCarthy's declaration regarding non-salary compensation, just as it was not entitled to an

evidentiary hearing on the number-of-employees issue. With respect to McCarthy, as discussed above, the Village is not entitled to a do-over regarding non-monetary compensation. In any event, Geraty would have has no way to cross-examine McCarthy given the Village's refusal to produce non-payroll records.[3]

Second, the Village took the legal position that only employees who received remuneration that was reflected in payroll records count as employees. The Village then argued that based on payroll records, it had fewer than 200 employees. If the court had agreed with the Village, the $100,000 cap would have applied. The court was not required to hold an evidentiary hearing to allow the parties to present uncontroverted evidence, via live witnesses, that they had already submitted to the court in written form. *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1077 (7th Cir. 2011) ("There is no credibility question to warrant an evidentiary hearing, and the district court did not abuse its discretion in declining to conduct one."). This is especially true when the Village itself took the position that its summary of payroll records and the supporting affidavit were "more than sufficient" to establish that it had fewer than 200 employees. (Dkt, No. 247 at Page ID #9992) ("Defendant has no objection to an evidentiary hearing to establish this issue [the accuracy of its calculations based on payroll records], should the Court require more evidence, albeit the evidence submitted is more than sufficient.").

---

[3] The Village contends that Geraty never asked for information about non-monetary compensation. This is incorrect: Geraty, among other things, asked for documents reflecting payments made by and expenses incurred by the Village in connection with fire and rescue services, including workers' compensation. (Dkt. 304-1, Page ID #15502; Dkt. 309, Page ID #15566-67.) The court is also not persuaded by the Village's new argument that it does not possess any documents relating to volunteer firefighters other than payroll records. This is inconsistent with the Village's prior position that individuals working as volunteer firefighters must go through a hiring process, complete training, and be selected to serve by the Chief of the Fire Department.

The court also disagrees with the Village's position that it "did not and was not required to provide the Court with evidence as to Plaintiff's theory of how to determine if a volunteer is an employee. That was for the evidentiary hearing." (Dkt. No. 304, Page ID #15491.) The issue before the court was how to determine if a volunteer is an employee. The Village presented its position in writing (the "payroll" method is determinative) and pointed to evidence supporting its theory (payroll documents) that was consistent with its view regarding which side bore the burden of proof. The Village also explained why it believed that Geraty's position about the number-of-employees issue was wrong. No evidentiary hearing was necessary as the question before the court turned on a legal issue, not a credibility dispute.

With respect to the court's conclusion that the Village had the burden of proof regarding status as an employee, the Village contends that the court erred by allowing Geraty to file the opening brief in the parties' post-submissions. The parties did not explicitly address the burden of proof issue in their submissions. If the Village believed that it was entitled to the last word on this subject, it could have objected when the court set the briefing schedule or sought leave to file a sur-reply. It did neither.

On a related note, the Village asserts that it was entitled to an evidentiary hearing before the court concluded that the Village had the burden of proof. This is incorrect: the burden of proof issue is a matter of law, not a contested matter of fact. In any event, in post-trial correspondence between the parties before the Village filed its brief, Geraty took the position that the Village bore the burden of proof. *See* Dkt. 309-1, Page ID #15597 ("Please be advised that if Defendant fails to produce these documents, Plaintiff will seek appropriate relief with the court including, but not limited to, a ruling that Defendant has failed to meet its burden of proof

to establish the number of its employees under Title VII."). The Village ignored this contention at its own peril.

As the court noted when it addressed the burden of proof:

> [W]hile courts considering whether volunteers are employees under Title VII have used differing analyses, authority regarding the burden of proof for establishing which damages cap is applicable is consistent. The Village chose to focus exclusively on payroll records to establish whether the volunteer firefighters count as employees. At this point – almost a year after the jury's verdict – it would unreasonably prolong litigation of this 2009 case to allow the Village to start over with new and much more extensive discovery about the volunteer firefighters.

(Dkt. 302, at Page ID #15462.) Accordingly, the Village is not entitled to relitigate the number-of-employees issue because in its written submissions addressing that issue, it either failed to ascertain that it bore the burden of proof or chose to argue that Geraty (who did not bear the burden) failed to carry that burden. *See Schaaf v. Midwest Transfer & Logistics, LLC*, No. 07-C-6555, 2010 WL 2722819, at *3 (N.D. Ill. July 8, 2010) ("Parties who receive an adverse ruling are not entitled to a mulligan, as the rules do not contemplate multiple rounds of motions relitigating the same subject on different grounds.").

Finally, in its motion to amend the judgment, the Village unequivocally asserted that it had between 169-173 employees using the "payroll" method. Today, it appears to be arguing that it incorrectly included seasonal employees in the 169-173 figure because these individuals did not work for 20 or more weeks during 2006 and 2007. The Village then contends that it would have proved that seasonal employees do not count for Title VII purposes had the court held an evidentiary hearing. However, the court (and Geraty) were entitled to rely on the Village's 169-173 range and the Village is bound by its assertion that it had between 169-173 employees on a single date in both 2006 and 2007. This is a critical point because the starting

number of uncontested employees affects the number of additional employees necessary to exceed 200. As the court previously explained:

> [T]he Village asserts that on the low end of the range, it had 169 employees in 2006 and 2007. If that is the case, 32 volunteer firefighters need to be counted as employees in this time period to reach the 201 employee minimum. On the high end of the Village's range, if the Village had 173 employees, 28 volunteer firefighters need to be counted as employees in the relevant time period to reach the 201 employee minimum.

(Dkt. 302, at Page ID #15469.)

Next, the court did not address whether seasonal employees, elected officials, political appointees, or police commissioners count as employees because it did not appear that resolving these issues would affect the outcome. The Village was not entitled to an evidentiary hearing to address the employment status of individuals who, at the time, were not necessary to reach the 200+ employee damages cap.

To conclude, an inordinate amount of time has passed since Geraty prevailed at trial. The court adheres to its ruling that "[t]he Village was entitled to pursue the strategy of its choice, but is bound by its decision to put all of its eggs into the payroll basket and forgo any other method of proof regarding the volunteer firefighters." (*Id*. at Page ID #15463.) The motion to reconsider is denied.

## II. THE DAMAGES CAP

The court previously held that "volunteer firefighters with an employment relationship with the Village during 2006 and 2007 for at least 20 weeks per calendar year count as employees for purposes of the Title VII damages cap." (*Id*. at Page ID #15468.) The sole unresolved issue before the court is how many volunteer firefighters satisfy this standard. The court allowed the parties to file another round of supplemental briefs. The Village's submissions

focused on reports prepared using payroll records. As before, the employment status of elected officials, political appointees (such as the Board of Police and Fire Commissioners), and seasonal workers does not appear to affect the outcome. Nevertheless, in the interests of completeness, the court considered the "employee" status of elected officials and political appointees as it attempted to determine the total number of employees in 2006 and 2007.[4] Thus, the court begins by considering if elected officials and political appointees are within the ambit of Title VII's definition of "employee." It then turns to the main issue – the parties' submissions regarding volunteer firefighters who did not receive remuneration in 2006 or 2007.

**A.     Elected Officials and Political Appointees**

Under Title VII, the term "employee" excludes:

any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision . . . .

42 U.S.C. § 2000e(f). The parties agree that elected officials are not employees under Title VII. Thus, the court will exclude elected officials from the headcount taken to determine which damages cap applies.

Geraty, however, contends that despite the language in § 2000e(f) exempting political appointees from the definition of "employee," political appointees are nevertheless countable as

---

[4] Based on the current record and because it does not affect the outcome, the court declines to consider whether the Village's seasonal workers in 2006 and 2007 count as employees under Title VII.

employees. In support, she directs the court's attention to 42 U.S.C. § 2000e-16c(a), which provides that:

> The rights, protections, and remedies provided pursuant to section 2000e-16b of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof —
>
> (1) to be a member of the elected official's personal staff;
>
> (2) to serve the elected official on the policymaking level; or
>
> (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

Section 2000e-16c(a) is a provision in the Government Employee Rights Act ("GERA"), which provides a remedy for political appointees and others who cannot seek relief under Title VII, as well as other anti-discrimination statutes, because they are excluded from the definition of "employee." *See Strong v. Delaware Cnty.*, 976 F. Supp. 2d 1038, 1045 (S.D. Ind. 2013); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 808 n.4 (10th Cir. 2008) (GERA was intended to "ameliorate the consequences to individuals of falling within certain of the[ ] exemptions" to the definition of employee in federal anti-discrimination laws, including Title VII and the ADEA). GERA allows certain individuals to pursue administrative remedies if they believe they have been the victim of race, sex, national origin, religious, age, or disability discrimination, even if they are excluded from the anti-discrimination statute's definition of "employee." *See Strong*, 976 F. Supp. 2d at 1045-46 (outlining the administrative remedies available under GERA and holding that district courts do not have jurisdiction to decide discrimination cases covered by GERA).

The plain language of Title VII's definition of "employee" excludes political appointees. 42 U.S.C. § 2000e(f). The fact that GERA gives political appointees an administrative remedy to address claims of discrimination does not transform political appointees into employees for the purposes of Title VII. Thus, the court finds that political appointees are not "employees" for purposes of Title VII's damages cap.

This does not mean, however, that the court can subtract all of the individuals who are listed as political appointees from the total number of employees. An individual's status as a political appointee turns on a fact-specific analysis. Specifically:

> An individual is a policymaking appointee if "the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Opp v. Office of State's Attorney of Cook Cnty.*, 630 F.3d 616, 619 (7th Cir. 2010). When making such a determination, courts look to the powers inherent in the office rather than to the actual functions performed by the current office holder. *Tomczak v. City of Chi.*, 765 F.2d 633, 640 (7th Cir. 1985). "[D]etermining the powers inherent in a given office may be done without the aid of a finder of fact 'when the duties and responsibilities of a particular position are clearly defined by law and regulations.'" *Opp*, 630 F.3d at 621 (quoting *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999)).

*Strong*, 976 F. Supp. 2d at 1046. The parties did not identify the political appointees or specify what powers are inherent in their offices. Nevertheless, Geraty did not challenge the Village's characterization of the individuals who are listed as political appointees. Instead, she argued that political appointees, in the abstract, are countable as employees. She has thus either waived or forfeited her ability to challenge the Village's characterization of certain individuals as political appointees. Accordingly, the court will subtract the political appointees from the total number of employees.

B.     **Volunteer Firefighters**

The court directed the parties to attempt to reach agreement on whether a sufficient number of volunteer firefighters worked a sufficient number of weeks in 2006 and 2007, based upon each volunteer's start and end dates, such that the Village's total number of employees was 201 or greater in those years. This seemingly simple inquiry has resulted in further controversy and protracted additional briefing.

The Village provided an array of different scenarios depending on whether the court included or excluded certain individuals, such as political appointees/policymakers or seasonal workers. All of the Village's calculations start with the number of individuals in each pay period who received a check. To avoid double-counting, the Village then subtracted the number of firefighters who received checks (because these individuals were already accounted for in the total number of employees who received checks). For the same reason, the Village subtracted individuals who were on the roster of volunteer firefighters but who had another job with the Village where they received a check.[5] Depending on the scenario, the Village then added in or excluded disputed categories of workers, such as seasonal staff. Finally, the Village added in the total number of potential volunteer firefighters for each payroll period based on the start and end dates as reflected in Village records.

---

[5] Geraty takes issue with the small number of individuals who served as volunteer firefighters and received a check for work performed for the Village in another capacity. She asserts that the Village failed to establish that these individuals should be subtracted because the Village relied on payroll records and did not support its position with any other evidence. (Dkt. 312 at Page ID #15674.) The court will not address this objection because it is clear that this sub-set of workers does not affect the end result.

This last step is the crucial point of disagreement. Geraty champions the use of the Personnel Roster maintained by the Illinois Office of the State Fire Marshal ("OSFM") for the Village in 2006 and 2007. (Dkt 273, Page ID#13053-62.) This roster has a significantly higher number of volunteer firefighters than the numbers reported by the Village. The Village contends that the OSFM roster should be excluded because it is hearsay.[6] *See* Fed. R. Evid. 802.

The Village, however, does not address Geraty's (correct) argument that the OSFM roster falls within the hearsay exception for public records and statements. *See* Fed. R. Evid. 803(8). Similarly, it does not address Geraty's contention that she properly authenticated the roster by filing it with the cover sheet from the OFSM that states that the OSFM produced the roster in response to her Freedom of Information Act ("FOIA") request. (Dkt 273, Page ID #13053.) *See Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F. Supp. 2d 933, 944 (N.D. Ind. 2005) (citing Fed. R. Evid. 901(b)(7) and 902 (5)) (holding that a letter verifying that a document is an official record maintained by a governmental entity that was obtained via a FOIA request is sufficient to authenticate that document). The court, therefore, will consider the OSFM roster.

The main discrepancy between the Village's records and the OSFM roster concerns 122 individuals who are listed as "inactive." Although the Village opposes the use of the OSFM chart, it considered it in the alternative. It then excluded the 122 inactive individuals from its total, as shown on its chart:

---

[6] Geraty also contends that records from the Village's Meeting Minutes show that there are more volunteer firefighters during the relevant time than the number reflected in the Village's payroll records. *See, e.g.*, Dkt. 309 at Page ID #15562. The Village does not challenge Geraty's use of the Meeting Minutes, but the court will not redo the parties' numerous charts based on the Meeting Minutes as it is unnecessary for present purposes.

| Total names on roster | 389 |
|---|---|
| End dates before 1/1/2006 | (29) |
| Start dates of 1/1/2008 or later | (137) |
| Duplicate names | (21) |
| Inactive status | (122) |
| TOTAL | 80 |

(Dkt. 318 at Page ID #15791.)[7]

Geraty stresses that the Village did not point to evidence establishing that volunteer firefighters on inactive status can be subtracted from the total number of firefighters and, instead, merely subtracted these individuals from the total. The existence of 100-plus additional individuals who potentially count as employees during the relevant time is obviously critical to determining if the Village had more than 200 employees in 2006 and 2007. In response to Geraty's argument about these individuals, the Village states:

> [E]each and every identified individual was identified as "inactive" on the roster. Defendant has produced the evidence to establish who the persons were that potentially could be considered volunteers during the applicable period with documents demonstrating their start and end dates. If Plaintiff is trying to claim that the Defendant's numbers are not accurate, then she cannot support that argument with a list of people who are on a Roster with an "inactive" status indication. ***It is not Defendant's burden to demonstrate when they became inactive.*** Defendant has demonstrated the potential volunteers for the time period. It does not likewise have to disprove Plaintiff's unsupported claims.

(Dkt. 318 at Page ID #15792) (emphasis added.)

---

[7] Geraty's numbers are slightly different. She asserts that 84 individuals appear in both Village payroll records and the OSFM roster. (Dkt. 312 at Page ID #15672.) There are also some discrepancies between start and end dates shown in charts prepared by Geraty and the Village. (*Id*. at Page ID #15672-73.) The court will not delve into these differences as even if the court uses the lowest possible numbers, the result remains the same.

The problem with this argument is that the court has already held that "the Village bears the burden of establishing if volunteers are countable because: (1) they had an employment relationship with the Village (2) for a sufficient length of time." (Dkt. 302 at Page ID #15468.) Geraty hit the ball into the Village's side of the court by pointing to evidence about 122 individuals who were on inactive status, per the OSFM roster, for 2006 and 2007. The Village – which bears the burden of proof – needed to point to evidence that either created a factual issue sufficient to warrant an evidentiary hearing or demonstrated that these individuals are not countable. Instead, it elected to refrain from providing a substantive response, despite the court's prior holding that the Village had the burden of proof with respect to the 20-week requirement.

Even using the Village's baseline number of employees (Exhibits B and E from its supplemental materials, Dkt. 310, which cover 2006 and 2007, respectively), these totals (which include the volunteer firefighters listed in the Village's records but do not include the volunteer firefighters who are on inactive status per the OSFM roster) range from 174 to 215. If the inactive status volunteers are added in, there clearly are more than 20 weeks in 2006 and 2007 where the number of employees exceeds 200.

The court would have preferred to calculate a precise number for each month in 2006 and 2007. The Village's litigation strategy, however, made this impossible. As discussed above, a party must marshal its evidence and arguments in a single submission. Litigation is not an endless series of re-dos after the court has issued an adverse ruling. This is especially true here, where the court specifically held that the Village had the burden of proof on the number-of-employees issue – including Title VII's 20-week requirement – and then allowed the parties to

re-brief the 20-week requirement. Accordingly, the court finds that Geraty's damages are capped at $200,000 (the cap associated with 201 or more employees). *See* 42 U.S.C. § 1981a(b)(3)(C).

### III. CONCLUSION

The Village of Antioch's motion [304] to reconsider the court's November 7, 2014 order [302] is denied. The remaining portion of the Village's motion to alter or amend the judgment [226], which seeks to reduce plaintiff Dawn Geraty's compensatory damages based on Title VII's damages cap, is granted to the extent that Geraty's damages are capped but denied to the extent that the Village contends that a cap of $100,000 is applicable as the court finds that Geraty's damages are capped at $200,000. The jury's compensatory damages award in favor of plaintiff Dawn Geraty in the amount of $250,000 is reduced to $200,000 pursuant to Title VII's damages cap applicable to employers with more than 200 employees. In addition, Geraty is awarded $61,186.72 in backpay and $18,267.44 in prejudgment interest. The total damages awarded in favor of Geraty and against the Village is $279,454.16. The clerk is directed to enter final judgment accordingly.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2015